J-A19013-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.S.W., A MINOR | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.J.W., FATHER | : | No. 780 EDA 2020 |

Appeal from the Decree Entered February 4, 2020
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-AP-0000830-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: D.W., A MINOR | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.J.W., FATHER | : | No. 781 EDA 2020 |

Appeal from the Order Entered February 4, 2020
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0002152-2018

BEFORE: PANELLA, P.J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED SEPTEMBER 16, 2020**

In November of 2019, D.J.W. ("Father") signed a form voluntarily relinquishing his parental rights to D.S.W. ("Child"), his adopted son. The court informed Father and his counsel that he had thirty days to rescind his voluntary relinquishment of parental rights. Father now appeals from the order entered February 4, 2020, that changed the permanent placement goal for Child to adoption and the decree, entered the same day, that terminated his

parental rights to Child. In addition, Father's counsel has filed a petition to withdraw and brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). After careful review, we grant the petition to withdraw and affirm.

The record reveals that the Philadelphia Department of Human Services ("DHS") filed a dependency petition regarding Child on September 20, 2018. DHS averred that it had received a report alleging that Father and Child were not getting along; that Child was getting into trouble at school; that Child was fighting, stealing, and accumulating bills by purchasing "inappropriate sexual videos;" and that Father told Child he would need to find somewhere else to live. Dependency Petition, 9/20/18, at ¶ 5b. The report further alleged that Child left Father's home and went to live with his adult sibling, K.D., who was willing to care for Child but needed custody in order to enroll him in school and provide him with medical care. **See id.** DHS averred that it attempted to visit Father at his home but was unable to do so because he did not answer the door. **See id.** at ¶ c-e. The trial court entered an order adjudicating Child dependent and placing him with K.D. on October 4, 2018.

On November 5, 2019, DHS filed petitions to terminate Father's parental rights to Child involuntarily, and to change Child's permanent placement goal from return to parent or guardian to adoption. The trial court held a hearing on November 21, 2019, during which it discussed with the parties Father's

apparent desire to terminate his parental rights to Child voluntarily. The court recessed the hearing so that Father could sign the necessary documentation.

After the hearing reconvened, Father's counsel conducted a colloquy of Father on the record. Father confirmed that he understood the documentation, that his counsel answered all of his questions, that he signed voluntarily, that no one had promised him anything in return for his signature, and that he did not sign under duress. *See* N.T., 11/21/19, at 10-11. The court then conducted a permanency review hearing and scheduled a subsequent hearing to address the voluntary termination of Father's rights.

DHS filed a petition to confirm Father's consent to Child's adoption on November 27, 2019. In addition, that same day, Father and DHS filed a joint petition to relinquish Father's parental rights to Child voluntarily.

The trial court conducted its subsequent hearing on February 4, 2020. During the hearing, Father's counsel asked him whether he would be willing to proceed with the voluntary termination of his parental rights to Child, and Father responded, "I guess [I] have no other choice." N.T., 2/4/20, at 6-7. The court announced that it would terminate Father's rights and entered a decree memorializing its decision.[1] The court also entered a permanency

---

[1] The trial court's decree indicated that Father relinquished his parental rights to Child voluntarily, and that DHS withdrew its petitions to terminate Father's rights involuntarily and to confirm his consent to Child's adoption.

review order changing Child's permanent placement goal to adoption.[2]  Father timely filed notices of appeal on March 3, 2020, along with concise statements of errors complained of on appeal.  Father's counsel filed a petition to withdraw and *Anders* brief in this Court on May 26, 2020.

We begin with a discussion of counsel's petition to withdraw and *Anders* brief.  *See Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa. Super. 2005) ("When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.") (citation and quotation marks omitted).  *Anders* requirements apply when appointed counsel seek to withdraw from an appeal from an order terminating parental rights.  *See In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004).

To withdraw pursuant to *Anders*, counsel must comply with the following requirements:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel

---

[2] Our review of the record reveals that the trial court entered two permanency review orders purporting to change Child's goal, the first on November 21, 2019, and the second on February 4, 2020.  It appears that the court did not intend to change Child's goal on November 21, 2019, and that the inclusion of a goal change provision in the court's order was a simple mistake, because the court stated at the conclusion of the hearing on November 21, 2019, that, if Father did not terminate his parental rights to Child voluntarily, "then at the next listing you will have a contested goal change, all right."  N.T., 11/21/19, at 12.

> or raise additional arguments that the [appellant] deems worthy of the court's attention.

***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (internal citation omitted). Counsel must provide this Court with a copy of the letter advising the appellant of his or her rights. ***See Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, our Supreme Court has set forth the following requirements for ***Anders*** briefs:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

In the instant matter, counsel's ***Anders*** brief includes a summary of the facts and procedural history of this case, a list of issues that could arguably support Father's appeal, and counsel's assessment of why those issues are frivolous, with citations to the record and relevant legal authority. Counsel also provided this Court with a copy of her letter to Father, advising him of his

right to obtain new counsel or proceed *pro se*.[3]  Therefore, counsel has complied substantially with the requirements of **Anders** and **Santiago**, and we may proceed to review the issues outlined in her brief.  In addition, we must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel."  **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Counsel's **Anders** brief identifies the following issues for our review:

1. Whether the trial court committed reversible error, when it voluntarily terminated Father's parental rights, where Father felt that he didn't understand what he was signing nor did he understand how to revoke his voluntary relinquishment of his parental rights[?]

2. Whether the trial court committed reversible error, when it voluntarily terminated Father's parental rights when Father wanted to revoke his relinquishment of his parental rights[?]

3. Whether the trial court committed reversible error, when it voluntarily terminated [F]ather's parental rights when Father felt forced to sign the voluntary relinquishments of his parental rights[?]

**Anders** Brief at 6.

These issues are interrelated, so we will address them together.  Our standard of review is as follows:

---

[3] While counsel's letter to Father informed him that he had the right to retain new counsel or proceed *pro se*, it did not specify that he could raise additional arguments he deemed worthy of this Court's attention.  **See Cartrette**, 83 A.3d at 1032.  Nonetheless, because counsel's letter indicates that she provided Father with a copy of her **Anders** brief, and because counsel's brief references Father's ability to raise additional arguments before this Court, we conclude that counsel sufficiently apprised Father of his rights.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Here, we note there is some ambiguity in the record as to the statutory authority employed by the trial court. We therefore begin our analysis by setting forth the two alternative procedures by which Father could have voluntarily terminated his parental rights. First, he could have filed a petition to relinquish his parental rights pursuant to Section 2501 of the Adoption Act, which provides as follows:

**(a) Petition.**--When any child under the age of 18 years has been in the care of an agency for a minimum period of three days or, whether or not the agency has the physical care of the child, the agency has received a written notice of the present intent to transfer to it custody of the child, executed by the parent, the parent or parents of the child may petition the court for permission to relinquish forever all parental rights and duties with respect to their child.

**(b) Consents.**--The written consent of a parent or guardian of a petitioner who has not reached 18 years of age shall not be required. The consent of the agency to accept custody of the child until such time as the child is adopted shall be required.

23 Pa.C.S.A. § 2501.[4]

Alternatively, he could have signed a consent to Child's adoption, and DHS or an adoptive parent would then file a petition to confirm that consent. This procedure is set forth at Section 2504 of the Adoption Act, which provides as follows, in relevant part:

> **(a) Petition to confirm consent to adoption.--**If the parent or parents of the child have executed consents to an adoption, upon petition by the intermediary or, where there is no intermediary, by the adoptive parent, the court shall hold a hearing for the purpose of confirming a consent to an adoption upon expiration of the time periods under section 2711 (relating to consents necessary to adoption). The original consent or consents to the adoption shall be attached to the petition.
>
> **(b) Hearing.--**Upon presentation of a petition filed pursuant to this section, the court shall fix a time for a hearing which shall not be less than ten days after filing of the petition. Notice of the hearing shall be by personal service or by registered mail or by such other means as the court may require upon the consenter and shall be in the form provided in section 2513(b) (relating to hearing). Notice of the hearing shall be given to the other parent or parents, to the putative father whose parental rights could be terminated pursuant to subsection (c) and to the parents or guardian of a consenting parent who has not reached 18 years of age. The notice shall state that the consenting parent's or putative father's rights may be terminated as a result of the hearing. After hearing, which shall be private, the court may enter a decree of termination of parental rights in the case of a relinquishment to an adult or a decree of termination of parental rights and duties, including the obligation of support, in the case of a relinquishment to an agency.

***

_____

[4] 23 Pa.C.S.A. § 2502 is similar to Section 2501, except that it provides for voluntary relinquishment to an adult intending to adopt the child.

23 Pa.C.S.A. § 2504(a)-(b).

As noted, there is a discrepancy in the certified record on appeal here. In its decree, the trial court indicated that Father relinquished his parental rights to Child voluntarily, and that DHS withdrew the petitions to confirm Father's consent and to terminate his rights involuntarily. This suggests that the court terminated Father's rights pursuant to Section 2501. However, the court's statements, at the conclusion of the hearing on February 4, 2020, and in its opinion, indicate that it intended to terminate Father's rights pursuant to Section 2504. The court explained at the hearing that Father "signed voluntary relinquishments" and did not revoke his signature within thirty days. N.T., 2/4/20, at 7. In its opinion, the court relied on Section 2504 explicitly. Trial Court Opinion, 5/21/20, at 5-7 ("Father voluntarily relinquished his parental rights to Child by signing consents to Child's adoption, pursuant to 23 Pa.C.S.A. §[]2504 . . . ."). We conclude, therefore, that the court's statement in its decree that DHS withdrew the petition to confirm Father's consent was a simple mistake or typographical error, and that the court intended to grant the petition to confirm Father's consent pursuant to Section 2504, rather than the voluntarily relinquishment petition pursuant to Section 2501.

We therefore analyze whether the trial court properly terminated Father's parental rights pursuant to Section 2504. Section 2711 of the Adoption Act provides the relevant time periods for the Section 2504

procedure, as well as the requirements that a consent must meet to be valid.

Of particular relevance to this appeal, Section 2711(c)(1)(i) provided that

Father's consent to Child's adoption would become irrevocable if he did not

revoke it in writing within thirty days of its execution, while Section

2711(c)(3)(i)(A) provided that Father could challenge the validity of his

consent by filing a petition alleging fraud or duress within sixty days of its

execution:

> **(c) Validity of consent.--**. . . . A consent to an adoption may only be revoked as set forth in this subsection.  The revocation of a consent shall be in writing and shall be served upon the agency or adult to whom the child was relinquished.  The following apply:
>
> (1) Except as otherwise provided in paragraph (3):
>
>> (i) For a consent to an adoption executed by a birth father or a putative father, the consent is irrevocable more than 30 days after the birth of the child or the execution of the consent, whichever occurs later.
>
> ***
>
> (2) An individual may not waive the revocation period under paragraph (1).
>
> (3) Notwithstanding paragraph (1), the following apply:
>
>> (i) An individual who executed a consent to an adoption may challenge the validity of the consent only by filing a petition alleging fraud or duress within the earlier of the following time frames:
>
>>> (A) Sixty days after the birth of the child or the execution of

the consent, whichever occurs later.

(B) Thirty days after the entry of the adoption decree.

(ii) A consent to an adoption may be invalidated only if the alleged fraud or duress under subparagraph (i) is proven by:

(A) a preponderance of the evidence in the case of consent by a person 21 years of age or younger; or

(B) clear and convincing evidence in all other cases.

**(d) Contents of consent.—**

(1) The consent of a parent of an adoptee under 18 years of age shall set forth the name, age and marital status of the parent, the relationship of the consenter to the child, the name of the other parent or parents of the child and the following:

I hereby voluntarily and unconditionally consent to the adoption of the above named child.

I understand that by signing this consent I indicate my intent to permanently give up all rights to this child.

I understand such child will be placed for adoption.

I understand I may revoke this consent to permanently give up all rights to this child by placing the revocation in writing and serving it upon the agency or adult to whom the child was relinquished.

If I am the birth father or putative father of the child, I understand that this consent to an adoption is irrevocable unless I revoke it within 30 days after either the birth of the child or my execution of the consent, whichever occurs later, by delivering a written revocation to (insert the name and address of the agency coordinating the adoption) or (insert the name and address of an attorney who represents the individual relinquishing parental rights or prospective adoptive parent of the child) or (insert the court of the county in which the voluntary relinquishment form was or will be filed).

If I am the birth mother of the child, I understand that this consent to an adoption is irrevocable unless I revoke it within 30 days after executing it by delivering a written revocation to (insert the name and address of the agency coordinating the adoption) or (insert the name and address of an attorney who represents the individual relinquishing parental rights or prospective adoptive parent of the child) or (insert the court of the county in which the voluntary relinquishment form was or will be filed).

I have read and understand the above and I am signing it as a free and voluntary act.

(2) The consent shall include the date and place of its execution and names and addresses and signatures of at least two persons who witnessed its execution and their relationship to the consenter. The consent of an incarcerated parent of an adoptee may be witnessed by a correctional facility employee designated by the correctional facility. Any consent witnessed by a correctional facility employee shall list the address of the correctional facility on the consent.

> (3) In lieu of two witnesses a consent may be acknowledged before a notary public.

23 Pa.C.S.A. § 2711(c)-(d).

Importantly, our Supreme Court clarified the Section 2504 procedure in a recent decision, *In re J.W.B.*, No. 93 MAP 2019, 2020 WL 3456626 (Pa., filed June 16, 2020). The Court explained that the purpose of a hearing to confirm a parent's consent is not merely to determine whether he or she has attempted to revoke the consent, or filed a petition challenging its validity, within the relevant time periods. Rather, the trial court must also "review the consents and consider any and all arguments raised by the parties challenging their conformity with the Adoption Act." *Id.* at *8. The Supreme Court observed, for example, that Section 2711(d) "includes an exhaustive list of the information that must be included in the consent document," and explained that a parent may challenge the absence of such information even after the relevant time periods expire. *Id.* ("The specific provisions of Section 2711, including in particular the time limitations for revocation or a validity challenge based upon fraud or duress, are premised on the execution of a consent that complies with the legislature's statutory requirements.").

Our review of the record in this case and the relevant law supports the trial court's decision to terminate Father's parental rights to Child. The court explained its decision in its opinion as follows:

On November 21, 2019, a goal change hearing was held for Child. At this hearing, Former Counsel[5] indicated to the trial court that Father, who was present for the hearing, wanted to voluntarily relinquish his parental rights to Child. Upon discovery of Father's wishes, the trial court informed Father that the hearing would be paused to allow Father to review the petition for voluntary relinquishment and the consent to adoption. The trial court recalled the matter approximately forty-five minutes after the hearing was placed on hold. When the hearing was recalled, Former Counsel indicated that Father signed [the] petition to voluntarily relinquish his parental rights and the consent to adoption. Former Counsel subsequently colloquied Father. Father indicated that he reviewed the petition for voluntary relinquishment of parental rights. Father indicated that he can read, write, and understand the English language. Father acknowledged his signature [on] the petition for voluntary relinquishment of parental rights, his signature regarding verification, and his signature consenting to the adoption. Father indicated that he completed twelfth grade. Father indicated that he was not under the influence of any drugs or alcohol, nor that he was under any impairment that kept him from understanding the petition for voluntary relinquishment of parental rights. When asked if Father understood the petition for voluntary relinquishment of parental rights, Father stated "I understand it perfectly." Father indicated that he had presented Former Counsel with any questions he had, and Former Counsel answered those questions. Father indicated he provided his signature voluntarily and was not promised anything in return for his signature. Former Counsel asked Father if he was under duress to sign the document and Father's response was "not at all." The trial court determined that Father signed the petition for voluntary relinquishment of parental rights and consent to adoption voluntarily, knowingly, and intelligently. The trial court held the decision regarding Child's goal change and involuntary termination of parental rights in abeyance. The trial court stated: "[Father], since you signed today, if you need to revoke your signature, you would have to do it in writing and would have to do it prior to the thirty days expiration and you would have to give it to your attorney and you also have to give it to the social worker,

_____

[5] The trial court granted the request to withdraw of Father's former counsel on April 20, 2020, and appointed new counsel to represent Father during this appeal.

okay." Father was instructed of the procedure on revoking his signature by the trial court. The next hearing for Child was held on February 4, 2020, and Father was present for the hearing. This hearing was held seventy-six days after the hearing on November 21, 2019. At this hearing, Former Counsel asked Father i[f] he was willing to proceed with the voluntary termination of parental rights, and Father's response was, "I guess I have no other choice." Neither Father nor Former Counsel indicated that Father wanted to revoke his voluntary relinquishment and there was no indication Father attempted to revoke within thirty days of November 21, 2019. Since Father failed to revoke his signature within thirty days, the consent to adoption that Father signed is irrevocable. Additionally, to date, Father did not challenge the validity of the signed consent by filing a petition alleging fraud or duress. Father also did not allege any fraud or duress at either hearing on November 21, 2019, or February 4, 2020. Within thirty days of the signing of the consent to adoption, Father failed to indicate that the consent given was not intelligent, voluntary, or deliberate. The trial court determined that Father's testimony at the November 21, 2019 [hearing,] regarding his signature on the consent to adoption was given voluntarily, knowingly, and intelligently. As a result, the trial court did not err or abuse its discretion by determining that Father voluntarily, knowingly, and intelligently signed the petition for voluntary relinquishment of parental rights and consent to adoption, and did not revoke his signature within thirty days, effectively voluntary relinquishing his parental rights to Child and consenting to Child's adoption.

*Id.* at 6-7 (citations to the record omitted) (footnote omitted).

As the trial court explained, the record demonstrates that Father signed a consent to adoption on November 21, 2019, and that he did not attempt to revoke it within thirty days. Thus, Father's consent was irrevocable pursuant to Section 2711(c)(1)(i). There is also no indication in the record that Father attempted to challenge the validity of his consent by filing a petition alleging fraud or duress within sixty days pursuant to Section 2711(c)(3)(i)(A).

Moreover, we have reviewed the consent to adoption that Father signed mindful of our Supreme Court's decision in **J.W.B.**, and have confirmed that it complied with the requirements of Section 2711. Our review reveals that the consent contained all of the information specified in Section 2711(d) and we have uncovered nothing suggesting that Father's decision to sign was not voluntary, knowing, and intelligent. Father affirmed at the time he signed the consent that he understood what he had signed, that his counsel answered all of his questions, that he signed voluntarily, that no one promised him anything in return for his signature, and that he did not sign under duress. **See** N.T., 11/21/19, at 11. Accordingly, the trial court did not commit an abuse of its discretion or an error of law by terminating Father's parental rights to Child voluntarily pursuant to Section 2504, and we affirm the court's February 4, 2020 decree.

We also affirm the trial court's February 4, 2020 order changing Child's permanent placement goal from return to parent or guardian to adoption. In light of our decision to affirm the court's termination decree, any challenge to the goal change order would be moot. **In the Interest of D.R.-W.**, 227 A.3d 905, 917 (Pa. Super. 2020) ("[E]ven if Father had not waived his goal change claim, it would be moot in light of our decision to affirm the court's termination decrees.").

Therefore, because our independent review of Father's claims demonstrates that they do not entitle him to relief, and because our review of

the record does not reveal any non-frivolous issues that Father's counsel overlooked, we grant counsel's petition to withdraw and affirm the February 4, 2020 voluntary termination decree and goal change order.

Petition to withdraw granted. Decree affirmed. Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: *9/16/2020*